IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Nalu Y. by and through his parents PATTY and LEE Y., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> DEPARTMENT OF EDUCATION, STATE OF HAWAII, <br><br> Defendant. | Civ. No. 11-00067 BMK <br><br> ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING THE HEARINGS OFFICER'S DECISION |

ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING THE HEARINGS OFFICER'S DECISION

In the proceedings below, the Hearings Officer issued a decision concluding that the State of Hawaii Department of Education ("DOE") did not deny Nalu Y. a Free and Appropriate Public Education ("FAPE") in part because Nalu Y. was not afraid of Kailua Elementary School ("KES"). For the following reasons, the Court reverses the Hearings Officer's decision regarding Nalu Y.'s fear of school and remands the matter back to the Hearings Officer on that issue. The Court affirms the Hearings Officer's decision in all other respects.

BACKGROUND

I.   Factual Background

Nalu Y. is a seven year old boy who has been deemed eligible for special education under the Individuals with Disabilities Education Act ("IDEA") under the categories of speech-language impairment and "other health impaired." (Decision ("Dec.") Doc. # 1, Ex. 1 at 3, ¶ 1.) In October 2006, he attended KES. Nalu Y.'s mother, Patty Y., testified that Nalu Y. was not progressing at KES. (Id. at ¶ 4.) On August 26, 2009, Nalu Y. started attending Variety School. (Id.)

On October 19, 2009, Nalu Y.'s parents (collectively, "Parents") sent the principal of KES ("Principal") a letter stating they did not want to have Nalu Y. assessed at KES prior to the IEP meeting because "Nalu has expressed in his own words that he does not want to go back to Kailua Elementary School." (Petitioner's Ex. 15 at 185.) On April 28, 2010, Nalu Y.'s parents sent Principal a letter stating that they would not bring Nalu Y. to KES because "he is terrified of going near the school and his day of learning will be fragmented." (Petitioner's Ex. 15 at 181.) On May 11, 2010, the parents sent Principal a letter stating that "[h]aving the IEP meeting at KES is fine; it is Nalu that is terrified of KES." (Petitioner's Ex. 15 at 178.)

On June 22, 2010, Nalu Y.'s IEP meeting was held. (Dec. at 4, ¶ 11.) Nalu Y.'s parents, the Student Services Coordinator ("SSC"), a representative from Variety School, and representatives from KES attended the meeting. The IEP

meeting lasted over three hours and many goals and objectives were discussed. (Id. at 6, ¶ 28.) The IEP offered Nalu Y. special education and speech therapy services. (Id. at 5, ¶ 21.) On June 30, 2010, Nalu Y.'s parents sent a letter to Principal stating that the IEP was not appropriate because the DOE set Nalu Y.'s goals too low, and that the DOE's failure to listen to their concerns regarding Nalu Y.'s fear of KES denied them meaningful participation in the IEP process. (Petitioner's Ex. 15 at 177.)

On July 7, 2010, the DOE sent Parents a Prior Written Notice, stating that "the option of remaining at Variety School was considered and rejected" because the "DOE is able to provide for Nalu's specially designed program." (Respondent's Ex. 8 at 33.) The Prior Written Notice also stated that "Parents shared with the team that Nalu is currently terrified of attending Kailua Elementary School" and that "Principal asked parents if they would be more comfortable if Nalu attended another DOE elementary school and offered to make the necessary arrangements to discuss this further." (Id. at 33a.)

In response to the DOE's prior written notice, the parents sent a letter to the DOE on July 14, 2010, rejecting the DOE's proposed placement and informing the DOE that they intended to place Nalu Y. at Variety School at public expense. (Petitioner's Ex. 15 at 174.) The parents referenced Nalu Y.'s fear of

3

KES and stated that "scheduling another IEP meeting would be fruitless because we brought to your attention our concerns at the last IEP meeting on 6/22/10 and those concerns were disregarded, not addressed, rejected, and/or denied." (Id.) In response to the foregoing letter, the DOE informed the parents that it considered the placement at Variety School to be unilateral, and that KES "is able to implement Nalu's IEP in the least restrictive environment and is able to provide a Free and Appropriate Public Education (FAPE)." (Petitioner's Ex. 15 at 173.)

On August 19, 2010, the parents requested a due process hearing under Hawaii Administrative Rules ("HAR") Title 8, Chapter 60. On December 8, 2010, an administrative hearing was held. (Dec. at 2.) The following relevant testimony was adduced at the hearing.

II.   Testimony Adduced at the Hearing

   A.   Testimony Regarding Nalu Y.'s Fear of KES

Ashley Sands testified that she had taught Nalu Y. at Variety School since Fall of 2009. (Transcript ("Tr.") at 15.) She testified that Nalu Y. was afraid of KES. (Id. at 51.) She observed this fear at Variety School when Nalu Y. would "continually ask if he had to go back to his other school." (Id. at 52.) When asking, he "would be visibly upset." (Id.) To assure Nalu Y. that he did not have to return to KES, Ms. Sands would take a picture of Nalu Y. at Variety School so

his parents could show him every day that he was going back to Variety School. (Id. at 52.) She testified that if KES was mentioned, Nalu Y. would become visibly uncomfortable. (Id.) She recounted that on a field trip to an area near KES, Nalu Y. nervously asked if they were going to KES. (Id. at 53.) She reassured Nalu Y. that they were not going to KES, and his "attitude immediately became much more positive." (Id.)

Patty Y. testified that during Nalu Y.'s first three years at KES, he was not scared. (Tr. at 81.) However, at the beginning of the 2009 school year, Nalu Y. was "frightened and scared" and "begged" her not to have him go to KES. (Tr. at 90.) She asked Nalu Y. why he did not want to go to KES, but she "couldn't make it out." (Id.) When she tried to take him to school, he did not want to go. (Id.) After Nalu Y. withdrew from KES, the parents avoided driving by KES because Nalu Y. "would freak out and start to cry." (Id. at 92.)

During an interview with DOE psychologist Dr. Donna Macri ("Dr. Macri"), Patty Y. informed her of Nalu Y.'s fear, but Dr. Macri did not evaluate the fear in her report. (Id. at 95-96.) Patty Y. advised the DOE of Nalu Y.'s fear of KES, but the DOE did not take any action. (Id. at 123.) She also testified that at the IEP meeting she brought up Nalu Y.'s fear, but the IEP team kept offering KES as an alternative to Variety School. (Id. at 134-35.) Although the July 7, 2010,

Prior Written Notice states that Principal asked her if she wanted the IEP implemented at a different DOE school, Patty Y. did not recall that occurring. (Id. at 143.) She understood the DOE's offer of placement as pertaining solely to KES. (Id. at 147.)

Dr. Macri testified that during her evaluation of Nalu Y. on March 24 and 25, 2010, Parents expressed concern that Nalu Y. was afraid of KES. (Id. at 164, 218.) Dr. Macri was aware that the parents had reported the fear to the DOE many times, but was unsure whether the DOE had taken any action. (Id. at 219.) She testified that the DOE did not need to evaluate Nalu Y.'s fear because other data did not indicate that Nalu Y. had an anxiety disorder. (Id. at 220.)

Jill Yamauchi, the Student Services Coordinator ("SSC"), testified that Parents raised concerns regarding Nalu Y.'s fear of KES at the IEP meeting. (Id. at 245.) Parents did not give a reason why Nalu Y. was scared, and only stated that when they had driven Nalu Y. by KES, he said he did not want to go there. (Id. at 246.) She also testified that Nalu Y. did not appear scared during the three years he was there, and that in August of 2009, Nalu Y. "seemed like a happy first grader in his classroom." (Id. at 247.) She testified that, at the IEP meeting, the DOE offered to discuss implementing the IEP at another DOE school, but the parents refused to have another meeting. (Id. at 248, 251-53.)

Jo Ann Yamashita, Nalu Y.'s former special education teacher, testified that she had taught Nalu Y. in preschool from 2006 to 2008, but had not taught him since that time. (Tr. at 297-98.) She testified that during that period of time, he never appeared terrified of KES. (Id. at 272.) She also testified that the parties discussed Nalu Y.'s fear of Home School at the IEP meeting. (Id. at 312.) She testified that she believed "the offer stands with any DOE school . . . ." (Id.)

    B.    <u>Testimony Regarding Autism</u>

Dr. Abby Royston, the district school psychologist, testified as an expert in school psychology, clinical psychology, developmental psychology, and autism. (Dec. at 4, ¶ 7.) She evaluated Nalu Y. in 2008, and testified that Nalu Y. did not meet the criteria for an autism spectrum disorder diagnosis. (Id.) Dr. Macri testified as an expert in clinical psychology, and conducted an assessment of Nalu Y. in 2010. (Id. at 4-5, ¶ 8, 13.) She concluded that Nalu Y. had expressive language disorder and ADHD. (Id. at 5, ¶ 14.) The Hearings Officer found that a psychologist had diagnosed Nalu Y. with autism previously, but that psychologist did not testify at the hearing. (Id. at 9, ¶ 44.) Dr. Macri testified that the psychologist's autism diagnosis relied upon improperly administered tests, and the psychologist did not observe Nalu Y. (Id. at ¶ 46.) A physician had also diagnosed Nalu Y. with autism, but relied on the psychologist's inappropriate tests.

(Id. at ¶ 48.) Patty Y. disagreed with Dr. Macri's assessment because Nalu Y. is not as social as Dr. Macri reported. (Id. at ¶ 45.)

    C.    <u>Testimony Regarding Goals of the IEP</u>

The Hearings Officer found that the IEP's present levels of educational performance ("PLEPs") indicated that Nalu Y. had nice peer interaction, and responds "appropriately to the tenor of the social situation with both peers and adults." (Id. at 4, ¶ 12.) Ashley Sands disagreed with the PLEPs and testified that Nalu Y. needs prompting to interact with his peers and does not interact appropriately in social situations. (Id. at 5, ¶ 15.) Patty Y. agreed with Ms. Sands. (Id.)

Ashley Sands also testified that Nalu Y. could do a majority of the goals in the IEP, and that most of the goals were set too low. (Id. at ¶ 18.) She testified that his writing goal was inappropriate because he could already copy and print words, his reading goal was too low because he could already read at an above average level, and his oral communication goal was inappropriate because he could already understand words. (Id. at ¶ 18, 19.) Patty Y. agreed with Ms. Sands' testimony. (Id. at ¶ 20.)

The SSC and the special education teacher testified that the parents provided input regarding the goals at the IEP meeting, and that over half of the

goals were revised at the meeting. (Id. at ¶ 26.) Both witnesses testified that no one complained that the goals were set too low at the IEP meeting. (Id. at ¶ 28.) The SSC testified that the goals and objectives addressed Nalu Y.'s needs, and that the PLEPs provided "sufficient baseline information." (Id. at 7, ¶ 29.)

III.   The Hearings Officer's Decision

On January 21, 2011, the Hearings Officer issued a decision concluding in relevant part that: 1) the DOE did not incorrectly identify Nalu Y.'s eligibility classification because Dr. Macri and Dr. Royston both testified that Nalu Y. "does not have a significant problem in reciprocal social interactions, which is needed to have an autism diagnosis;" 2) the DOE did not fail to properly assess Nalu Y. because "Mother's claim that [Nalu Y.] was terrified of [KES] is not supported by the facts or any expert testimony;" and 3) the PLEPs and goals in the IEP were appropriate. (Id. at 12-15.) Parents subsequently appealed the Hearings Officer's decision to this Court, in part asserting that the Hearings Officer erred by making the above determinations.

The Court reverses the Hearings Officer's decision because the record indicates that Nalu Y. was scared of KES. The Court remands the matter to the Hearings Officer to determine whether the DOE denied Nalu Y. a FAPE by failing to address or investigate parental concerns regarding Nalu Y.'s fear. The Court

9

affirms the Hearings Officer's decision in all other respects.

## STANDARD OF REVIEW

"In an action challenging an administrative decision, the IDEA provides that 'the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" Ojai Unified School Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993) (quoting 20 U.S.C.A. § 1415(e)(2) (West 1990)).  When reviewing state administrative decisions, "courts must give 'due weight' to judgments of education policy" and are not empowered to "substitute their own notions of sound educational policy for those of the school authorities which they review." Id. at 1472 (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987) (internal quotation marks omitted)).  "How much deference to give state educational agencies, however, is a matter for the discretion of the courts[.]" Id. (quoting Gregory K., 811 F.2d at 1311) (internal quotation marks omitted). Deference to a hearing officer's findings is warranted where the findings are "thorough and careful." See J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 949 (9th Cir. 2010) (quoting JG v. Douglas County School Dist., 552 F.3d 786, 793 (9th Cir. 2008)).  As discussed below, the Court does not defer to the Hearings

Officer's findings with regard to Nalu Y.'s fear, but defers to the remaining portion of the decision.

## DISCUSSION

I.  The Hearings Officer Erred By Concluding That Nalu Y. Was Not Afraid Of KES.

The Hearings Officer concluded that Nalu Y. was not afraid of KES by referring to testimony from DOE witnesses and various forms of circumstantial evidence. While an appellate court typically defers to an administrative agency's factual findings, in IDEA cases, a Court must consider findings carefully, and "endeavor to respond to the hearing officer's resolution of each material issue." Gregory K., 811 F.2d at 1311 (quoting Town of Burlington v. Dept. of Ed., 736 F.2d 773, 792 (1st Cir.1984)). After such consideration, "the court is free to accept or reject the findings in part or in whole." Id. If the Hearings Officer's decision is thorough, it receives more deference. See J.L., 592 F.3d at 949 ("We give particular deference to 'thorough and careful' administrative findings.").

The Hearings Officer concluded that Nalu Y. was not afraid of KES because the SSC testified that Nalu Y. appeared to be a happy first grader. (Dec. at 13.) The Hearings Officer's decision on this issue was not "thorough" or "careful" because it ignored critical testimony regarding Nalu Y.'s fear. The Hearings Officer failed to discuss Ashley Sands' testimony that Nalu Y. was scared of KES.

(Tr. at 51-53.) Additionally, Patty Y. testified that Nalu Y. was afraid of KES, and had sent letters informing the DOE of that fear.

The Hearings Officer erred by disregarding the above testimony in favor of much weaker evidence that Nalu Y. was not afraid of KES. The Hearings Officer credited the following facts and testimony over Patty Y. and Ashley Sands' direct testimony: Patty Y. could not state a reason for Nalu Y.'s fear, the parents declined counseling services for Nalu Y., the SSC testified that Nalu Y. appeared to be a happy first grader, Dr. Macri testified that there was no independent data confirming Nalu Y.'s fear, and there was no mention of the fear in a July 21, 2010 physician's report. (Dec. at 13-14.) Although the SSC testified that Nalu Y. did not appear scared during the one month that Nalu Y. attended KES in the 2009-2010 school year, it is reasonable to infer that Patty Y. and Ashley Sands had more interaction with Nalu Y. than the SSC. The Hearings Officer erred by disregarding the testimony of the two witnesses who interacted with Nalu Y. the most, in favor of witnesses who had much less interaction with Nalu Y. and weak circumstantial evidence. Therefore, the Court reverses the Hearings Officer's finding that Nalu Y. was not scared of KES.

Because the Hearings Officer concluded that Nalu Y. was not afraid of KES, the Hearings Officer did not address the issue of whether the DOE denied

Nalu Y. a FAPE by failing to investigate or listen parental concerns regarding Nalu Y.'s fear. (Dec. at 13-14.) Therefore, the Court remands the matter to the Hearings Officer for a determination of those issues.

II.     The DOE Did Not Improperly Classify Nalu Y.'s Eligibility Category

At the administrative hearing, Parents argued that the DOE should have identified Nalu Y. as autistic for eligibility purposes. (Dec. at 11.) The Hearings Officer concluded that the DOE did not incorrectly classify Nalu Y.'s eligibility category because Dr. Macri testified that Nalu Y. was not autistic. (Id. at 12.) The Hearings Officer observed that Dr. Macri and Dr. Royston testified that the former psychologist's autism diagnosis relied upon improper testing procedures. (Id.)

On appeal, Parents assert that Dr. Macri denied Parents meaningful participation in the formulation of the IEP by ignoring their input and failing to interview Ashley Sands. (Doc. # 17 at 20.)

One of the procedural safeguards the IDEA protects is the right of the parents "to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child . . . ." 20 U.S.C. § 1415(b)(1). Although the IDEA does not define the precise level of parental participation necessary to satisfy the

Act, courts have held that parental participation must be meaningful. See <u>W.G. v. Board of Trustees of Target Range School Dist. No. 23</u>, 960 F.2d 1479, 1485 (9th Cir. 1992) ("The Act imposes upon the school district the duty to conduct a meaningful meeting with the appropriate parties.").

As the Hearings Officer found, Dr. Macri concluded that Nalu Y. did not have autism. (Dec. at 4, at ¶ 8.) Parents did not provide any expert testimony indicating that Nalu Y. had autism. Therefore, the Court cannot conclude that the DOE erroneously classified Nalu Y.'s eligibility category.

Furthermore, Parents' argument that the clinical psychologist denied them meaningful participation by ignoring their suggestions regarding autism is not persuasive, because Dr. Macri testified that she observed Nalu Y., had a lengthy interview with Parents, and had Parents fill out surveys about Nalu Y. (Tr. at 162-165.) Altogether, the clinical psychologist opined that she spent nine hours interacting with Parents during her evaluation of Nalu Y. (<u>Id.</u> at 174.) Although Parents assert that Dr. Macri did not interview Ashley Sands about Nalu Y.'s socialization ability and that Nalu Y. often used rote behavior, Dr. Macri's testimony indicates that Parents were not denied meaningful participation in her assessment of Nalu Y.

III.   <u>The June 22, 2010 IEP Did Not Deny Nalu Y. a FAPE.</u>

Parents assert that the PLEPs in the IEP did not take into account Variety School's reports, and that Nalu Y. had already mastered many of the IEP goals. (Doc. # 17 at 20-26.) The Court concludes that these arguments are not persuasive.

First, the Hearings Officer determined that the PLEPs were not deficient. (Dec. at 14.) Parents assert that the Hearings Officer erred by concluding that the PLEPs provided "sufficient baseline information." (Doc. # 17 at 8.) As an example, Parents assert that the PLEPs do not contain information contained in Variety School reports regarding Nalu Y.'s excellent reading ability. (Id. at 22.) The Court concludes that the Hearing Officer did not err by concluding that the PLEPs were adequate.

The IDEA requires that the IEP contain "a statement of the child's present levels of academic achievement and functional performance[,]" including "how the child's disability affects the child's involvement and progress in the general education curriculum." 20 U.S.C. § 1414(d)(1)(A)(i). As the Hearings Officer noted, the PLEPs in this case appropriately summarized Nalu Y.'s educational performance. (Petitioner's Ex. 3 at 11-14.) Furthermore, although Ashley Sands disagreed with the PLEPs (Dec. at 5, ¶ 15), the special education teacher testified that the parents and the Variety School representative provided

15

input into developing the PLEPs and that she believed that the PLEPs "identifi[ed] all of Nalu's needs[.]" (Id. at 281-82.)  Finally, the specific examples of the PLEPs that Parents challenge do not appear to add new information.  For instance, Parents assert that the PLEPs omit information from Variety School reports that Nalu Y. "reads independently in class" and "answers the questions on his own and gets 98% everytime."  (Doc. # 17 at 22.)  However, the PLEPs state that "Nalu reads independently in class[,]" and "is a great reader and seems to be doing very well with his reading comprehension."  (Petitioner's Ex. 3 at 12.)  Parents have not demonstrated that the PLEPs failed to accurately describe Nalu Y.'s educational ability.

Second, the Hearings Officer did not err by concluding that the IEP set reasonable goals.  (Dec. at 14.)  "An IEP must include, among other things, 'a statement of measurable annual goals, including academic and functional goals, designed to . . . meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and . . . to meet each of the child's other educational needs that result from the disability.'"  Anchorage School Dist. v. D.K., No. 08-00031 TMB, 2009 WL 5908720, at *7-8  (D. Alaska Oct. 30, 2009) (quoting 20 U.S.C. § 1414(d)(1)(A)(II)).  A district court reviewing the merits of an IEP must examine

whether the program is "reasonably calculated to enable the child to receive educational benefits[,]" and the FAPE to which a child is entitled "does not mean the absolutely best or 'potential-maximizing' education for the individual child." Id.; Gregory K. v. Longview School Dist., 811 F.2d 1307, 1314 (9th Cir. 1987). Rather, the DOE is "obliged to provide 'a basic floor of opportunity' through a program 'individually designed to provide educational benefit to the handicapped child.'" Gregory K., 811 F.2d at 1314 (quoting Rowley, 458 U.S. at 201.)

The Court concludes that Parents' argument is not persuasive because Nalu Y. had not mastered the goals laid out in the IEP. Parents argue that the goals that Nalu Y. improve his writing, math, and counting skills were not challenging enough. (Doc. # 17 at 20-26.) However, the special education teacher testified that, although Nalu Y. had achieved some of the goals, he could not do them consistently. (Tr. at 294, 304, 310-11.) Both the SSC and the special education teacher testified that the parents provided significant input into the creation of the goals and did not object to any of the goals at the IEP meeting. (Dec. at 6, ¶¶ 26, 28.) The special education teacher also testified that the goals and objectives of the IEP addressed Nalu Y.'s needs.[1] (Dec. at 7, ¶ 29; Tr. at 286.) Therefore, the Court

---

[1] Although Parents argue that some of the goals were common to all second graders (Doc. # 17 at 22), they have not produced any authority indicating that a goal is inappropriate if it is common to students in Nalu Y.'s grade level.

concludes that the goals were appropriate and provided meaningful educational benefit to Nalu Y.

## CONCLUSION

For the foregoing reasons, the Court reverses the Hearings Officer's decision regarding Nalu Y.'s fear of school, and remands for a determination of whether the DOE denied Nalu Y. a FAPE in that regard. The Hearings Officer's decision is affirmed on all other issues.

DATED: Honolulu, Hawaii, March 9, 2012.

IT IS SO ORDERED.



   /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Nalu Y. v. Dept. of Educ., State of Hawaii, Civ. No. 11-00067 BMK, ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING THE HEARINGS OFFICER'S DECISION